UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No.: 17-3770(DSD/TNL)

United States of America, ex rel., and
Cavallino Consulting LLC, Relator,

      Plaintiffs,

v.                                                                 **ORDER**

Medtronic, Inc.,

      Defendant.

    Adam M. Shapiro, Esq. and Cotchett, Pitre & McCarthy, 840 Malcolm Road, Burlingame, CA 94010, counsel for plaintiff.

    Dulce J. Foster, Esq. and Fredrikson & Byron, PA 200 South 6th Street, Suite 4000, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss by defendant Medtronic, Inc. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

**BACKGROUND**

This qui tam action arises from relator Cavallino Consulting, LLC's claim that since 2012 Medtronic has fraudulently charged hospitals owned and operated by the federal government for expedited shipping costs it did not actually incur. Relator is a consulting firm based in California that conducts audits, known as Transportation Overcharge Recovery Audits, of health care systems to "uncover transportation overcharging." Compl. ¶ 8. Medtronic

is a medical device manufacturer that sells products to hospitals throughout the country.[1]  Id. ¶ 11.

Relator alleges that, through ten years of audits, it discovered that Medtronic has engaged in a widespread scheme to "overcharge for expedited shipping across various health care systems." Id. ¶ 10.  Relator does not allege that it audited a government hospital or entity or that it otherwise investigated Medtronic's sales to the government in reaching that conclusion. Nor does relator identify representative examples of sales in which Medtronic overcharged the government for expedited shipping. See Compl. Ex. 1.  Relator nevertheless alleges that Medtronic receives substantial discounts on expedited shipping from various carriers that it failed to pass on to the government despite its contractual obligation to do so.  Compl. ¶ 21.  Relator broadly estimates that the discounts ranged from 35% to 65%, which resulted in millions of dollars in overpayment by the government.  Id. ¶¶ 2, 21.

The contract attached to the complaint is an "f.o.b. destination" contract which, the parties agree, means that the listed prices include the cost of delivery.  Compl. Ex. 1 ¶ 15. The contract also provides, however, that for expedited, overnight,

---

[1] The complaint mistakenly asserts that Medtronic's headquarters are in Illinois rather than Minnesota.  Compl. ¶ 11. This error is apparently a stray allegation from a nearly identical complaint filed by relator against a medical device manufacturer based in Illinois.  The complaint also erroneously refers to Medtronic as "defendants," which is also presumably due to relator's other similar lawsuits.

and two-day delivery, the government is "responsible for the additional shipping charge[s] between the normal surface (ground) rate and expedited rate."  Id. ¶¶ 11b, 11c.  The parties disagree as to the meaning of this provision.  According to relator, it requires the government to pay the actual expedited shipping costs paid by Medtronic, whereas Medtronic interprets it to mean that the government is required to pay the expedited shipping "rate" notwithstanding any carrier discounts.  According to relator, the contract language is sufficiently clear to establish that Medtronic knowingly presented false claims for payment to the government by submitting invoices that included expedited shipping costs it did not actually incur due to carrier discounts.  Compl. ¶¶ 23-24.

On September 10, 2015, relator commenced this suit against Medtronic in the Central District of California alleging violations of the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1)(A), (B), and (G).  The government declined to intervene.  ECF No. 19.  Medtronic moved to transfer the case to Minnesota and to dismiss.  ECF Nos. 34, 35.  The California court granted the transfer motion finding that convenience and fairness were best served by transferring the case to Minnesota.  ECF No. 41, at 2-4.  The court declined to entertain the motion to dismiss given the pending transfer.[2]  Id. at 4.  Medtronic now moves to dismiss all claims against it under

---

[2]  The motion to dismiss was fully briefed and substantively identical to the instant motion.  See ECF Nos. 35, 36, 39.

3

Federal Rules of Civil Procedure 9(b) and 12(b)(6). Relator requests the opportunity to file an amended complaint should the court find that its pleading is insufficient.

## DISCUSSION

**I.   Standard**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

Here, because all of relator's claims are based in fraud, each must also meet the heightened pleaded requirements of Rule 9(b). See U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556

(8th Cir. 2006) ("Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)."). The requirements of Rule 9(b) are read "in harmony with the principles of notice pleading," and the level of particularity required depends upon the nature of a case. Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (citation and internal quotation marks omitted). However, "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (citation and internal quotation marks omitted). To satisfy the heightened pleading requirement, a plaintiff must set forth the "who, what, where, when, and how" of an alleged fraud. Joshi, 441 F.3d at 556 (citation and internal quotation marks omitted). In other words, a plaintiff must plead "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (citation and internal quotation marks omitted).

**II.  Adequacy of Complaint**

The FCA imposes liability against any person who knowingly presents a false or fraudulent claim for payment to the federal government.[3]  31 U.S.C. § 3729(a)(1).  The FCA allows private

---

[3] The complaint alleges that Medtronic's conduct violates the Federal Acquisition Regulations (FAR) and the related contracts, Compl. ¶¶ 3, 15-17, 24, but relator now concedes that the FAR is

citizens, known as relators, to bring an action on the government's behalf. U.S. ex rel. Thompson v. Walgreen Co., 621 F. Supp. 2d 710, 712 (D. Minn. 2009). Even when, as here, the government declines to intervene, "a relator pursuing a qui tam action is still representing the interests of the government." U.S. ex rel. Davis v. Hennepin Cty., No. 15-2671, 2016 WL 10747256, at *2 (D. Minn. July 8, 2016).

The FCA defines "claim" as "direct requests to the Government for payment." Universal Health Servs. v. U.S. ex rel. Escobar, 136 S. Ct. 1989, 1996 (2016) (citing 31 U.S.C. § 3729(b)(2)(A)). "Knowingly" means "that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information...." 31 U.S.C. § 3729(b)(1). Specific intent to defraud is not required. Id. § 3729(b)(1)(B).

Where the complaint alleges a "systematic practice of submitting fraudulent claims, the FCA complaint 'must provide some representative examples of [the] alleged fraudulent conduct,' specifying 'the time, place, and content of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" U.S. ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009) (quoting

---

irrelevant to this case. Pl's. Opp'n Mem. at 2.

Joshi, 441 F.3d at 556-57). However, "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" may be sufficient in lieu of representative examples. U.S. ex rel. Thayer v. Planned Parenthood of the Heartland, 765 F.3d 914, 918 (8th Cir. 2014).

Here, the complaint contains no representative examples of the fraud alleged, so the question is whether the complaint adequately sets forth reliable indicia that false claims were actually submitted. The court finds that it does not. Relator alleges that Medtronic engaged in a broad and ongoing scheme to defraud, but fails to credibly allege the key components of that fraud. Most notably, the complaint does not plausibly allege that Medtronic submitted any claims to the government, let alone any fraudulent claims. There is no specific allegation that the government ever ordered a device from Medtronic under the contract attached to the complaint or any other contract.[4] Nor does the complaint allege that any hypothetical sales involved expedited shipping to any government hospital or resulted in an invoice from Medtronic for expedited shipping costs that did not take into account any

---

[4] The relator has failed to identify any contract Medtronic may have with the government beyond the publicly available contract attached to the complaint. See Compl. ¶ 12 ("On information and belief, Medtronic currently holds multiple contracts with the Department of Veteran's Affairs and other federal government entities.").

discount. Rather, the complaint simply alleges, without any detail whatsoever, that Medtronic routinely failed to pass along discounts to the government as required.

As to the discounts, relator only alleges that Medtronic received discounts from carriers ranging from 35-65%. Compl. ¶ 21. It does not provide the basis for that conclusory statement, nor does it explain how relator knows that information given that it audits hospitals and not medical device manufacturers such as Medtronic. Whether and to what extent Medtronic may receive carrier discounts is pure speculation.

Even assuming sales occurred and that Medtronic failed to pass along carrier discounts to the government, it is debatable whether such conduct violated the contract provided to the court. Although relator's interpretation of the expedited delivery provision is not unreasonable, the provision does not clearly require Medtronic to charge government hospitals for expedited shipping costs actually incurred. Absent such clarity, Medtronic could not have "knowingly" submitted a false claim to the government as that term is defined under the FCA. See U.S. ex rel. Hixson v. Health Mgmt. Sys., Inc., 613 F.3d 1186, 1190 (8th Cir. 2010) (quoting Hagood v. Sonoma Cty. Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996)) ("[A] defendant does not act with the requisite deliberate ignorance or reckless disregard by 'tak[ing] advantage of a disputed legal question.'"). As a result, relator has failed to adequately allege

8

a claim under the FCA and dismissal is warranted.

Realtor requests leave to amend the complaint should the court grant the motion to dismiss.  Despite having had many months to do so,[5] relator has not proffered an amended complaint, nor has it explained to the court how an amended complaint would remedy the deficiencies in the original complaint.  As a result, the court denies leave to amend.  See Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.").

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 50] is granted; and
2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 16, 2018

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court

---

[5] Relator has been aware of Medtronic's arguments in support of dismissal since June 2017, when Medtronic filed its motion to dismiss in California.  ECF No. 35.